475 S.E.2d 504

**Donald D. ELKINS, Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

**No. 23116.**

Supreme Court of Appeals of
West Virginia.

Submitted April 24, 1996.

Decided July 17, 1996.

John H. Bicknell, Menis E. Ketchum, Greene, Ketchum, Bailey & Tweel, Huntington, for Appellee.

Charles S. Piccirillo, Timothy L. Mayo, Shaffer & Shaffer, Madison, for Appellant.

PER CURIAM.

This is a declaratory judgment action filed by an insured, Donald Elkins, to determine the status of underinsurance coverage in two separate automobile liability insurance policies.

The Circuit Court of Cabell County found that the insurer, State Farm Mutual Insurance Company, effectively cancelled one of the policies so that there was no underinsurance coverage arising from that contract; however, the trial court concluded that there was underinsurance coverage in the second contract. That decision produces cross-appeals with the insured challenging the lower court's finding that the first policy was cancelled and the insurer quarreling with the lower court's conclusion that the second policy provides underinsurance coverage.

We agree with the insured that the first policy was not effectively cancelled, and therefore, underinsurance coverage, which was embraced in that insurance contract, must be provided to the insured. Because we find underinsurance coverage in the first policy, we need not address any issue relating to whether there is underinsurance coverage in the second policy.

## I.

### FACTS

The facts in this case are not in dispute. On January 7, 1993, State Farm issued an automobile liability insurance policy to Mr. Elkins, insuring a 1984 Chevrolet S–10 Blazer ("first policy"). The policy included underinsurance coverage in the amount of $100,000 and was issued for the period beginning January 7, 1993, and ending July 7, 1993. The gross amount of the premium for the coverage period was $343.15. The insured elected to pay the premium on an installment basis of two payments, the first installment was timely paid on January 7, 1993. The second installment in the amount of $171.58 was due on March 8, 1993. This second installment is the crux of this decision.

The insured did not pay the second installment of $171.58 by the due date of March 8, 1993. On March 15, 1993, the insurer sent a notice to the insured that it designated as a "cancellation notice" ("Notice"). The form of that notice is as follows:

**CANCELLATION NOTICE**
NON-PAYMENT OF PREMIUM

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.   0308 4
FREDERICK MD 21709-1000

| POLICY NUMBER | CANCELLATION DATE | AMOUNT DUE | CAR/VEHICLE | CLASS | NOTICE SENT |
|---|---|---|---|---|---|
| 236 5150-A07-48D | APR 19 93 | $171.58 | 84 CHEVROLET S10 BLAZER | 1B3H1 | MAR 15 93 |

WE HAVE NOT RECEIVED THE FULL AMOUNT REQUIRED TO KEEP THIS POLICY IN FORCE SO IN ACCORDANCE WITH ITS CANCELLATION PROVISIONS YOUR POLICY IDENTIFIED IN THIS NOTICE IS HEREBY CANCELLED EFFECTIVE 12:01 A.M. STANDARD TIME   APR 19 93   DUE TO NON-PAYMENT OF THE PREMIUM. NO FURTHER NOTICE WILL BE SENT TO YOU.

4-1323-00

ELKINS, DONALD D
PO BOX 117
NOLAN WV 25687-0117

C M SLATER
Telephone   304-235-3290

100310900017158   0484002365150811   >
G-5378 9

On April 23, 1993, the insured was involved in an automobile accident with another vehicle whose owner carried liability coverage in the amount of $20,000, which was insufficient

to cover the injuries sustained by Mr. Elkins. On April 26, 1993, the insurer acknowledged that the insured made the second installment payment in the amount of $171.58. The insured effected a settlement with the liability carrier of the automobile that was involved in the accident in the amount of $20,000, which was the limit of liability coverage under that policy. The insurer refused to consent to that settlement because it determined that its consent was not necessary, as the first policy which the insured contended implicated underinsurance coverage, had been cancelled.

The insured attempted to collect the total underinsurance coverage under the first policy; the insurer refused, contending that no coverage was available under the first policy because that policy was cancelled for nonpayment of premium.

In addition to the insured's attempt to obtain underinsurance coverage within the first policy, he attempted to obtain underinsurance coverage on the second policy insuring a GMC truck ("second policy"). The insurer refused to provide coverage under the second policy, contending that the "owned but not insured" exclusion in the second policy denied any coverage.[1]

The insured filed this declaratory judgment action contesting the insurer's denial of coverage under both policies. The parties stipulated all critical facts and each moved for summary judgment.

As we noted, the circuit court agreed with the insurer that the first policy was effectively cancelled for nonpayment of the premium; however, the circuit court found that the second policy provided underinsurance coverage on the theory that the underinsurance coverage attaches to the person who purchases the coverage and not the vehicle, and therefore, the second policy afforded underinsurance coverage even though it was purchased on the vehicle not involved in the underlying accident.

Both parties appeal. The insured appeals that portion of the opinion which holds that the Notice of Cancellation on the first policy was effective, and the insurer appeals that portion of the opinion which holds that the second policy provides underinsurance coverage to the insured.

## II.

### STANDARD OF REVIEW

As is our practice, we set forth the applicable standard of appellate review. Appellate review of a circuit court's entry of declaratory judgment, and the granting of summary judgment is *de novo.* Syllabus Point 3, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995); *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III.

### DISCUSSION

We believe that our answer as to whether the insurer has effectively cancelled the first policy is dispositive of all issues raised in this appeal. We have articulated the standard by which a notice of cancellation is measured in *Conn v. Motorist Mutual Ins. Co.,* 190 W.Va. 553, 439 S.E.2d 418 (1993). Syllabus Point 2 in *Conn* defines what an insurance company must do to effectively cancel a policy of insurance which deprives an insured of any benefits under the insuring agreement as:

> "A notice of cancellation of insurance must be clear, definite and certain. While it is not necessary that the notice be in any particular form, it must contain such a clear expression of intent to cancel the policy that the intent to cancel would be apparent to the ordinary person. All ambiguities in the notice will be resolved in favor of the insured." Syllabus, *Staley v. Municipal Mutual Insurance Co.,* 168 W.Va. 84, 282 S.E.2d 56 (1981).

---

1. The exclusion states that underinsurance coverage does not apply when the insured is driving a car owned or operated by the insured, but which is not covered by underinsurance coverage. The exclusion states is as follows: Coverage W— there is no coverage under Coverage W [underinsured motorist coverage]: 1. For bodily injury to an insured:

  a. while occupying a motor vehicle owned by you, your spouse, or any relative, if it is not insured for underinsured motor vehicle coverage.

Syllabus Point 2, *Conn*, 190 W.Va. 553, 439 S.E.2d 418.

 Extrapolating the standard in *Conn* to the resolution in this case raises the following inquiry: Would an ordinary person reading the Notice of Cancellation grasp that they could do nothing to reverse the effects of the Notice of Cancellation including the payment of the overdue premium? In other words, was the cancellation "clear, definite and certain?"

A substantial portion of the text of the Notice is devoted to discussing the cancellation, however in a prominent portion of the Notice, the cancellation date is recited and strategically positioned next to the cancellation date in a block that says "amount due $171.58." *See supra* p. 413, 475 S.E.2d at 505 for Notice of Cancellation. Any ordinary person reading this Notice would understand "amount due $171.58" as: (a) a request for payment; and (b) if payment is made, only one thing will happen—the policy will continue for the remainder of coverage period until July 7, 1993. There is no other logical explanation as to why the insurer would insert in the Notice of Cancellation any information relating to the amount due, particularly when the amount due expresses the exact amount that would enable the coverage to continue for the remainder of the term of the policy. If the insurer intended to cancel this policy effectively, unconditionally and unequivocally, it should have omitted any reference to the amount due because there would be nothing that could be due if coverage indeed had been cancelled. The use of the phrase "amount due," joined with the specific amount actually due, would induce an ordinary person to believe that if payment were made, the cancellation would be rescinded. At the very least, the Notice of Cancellation is contingent and ambiguous. As we held in the Syllabus of *Staley v. Municipal Ins. Co., supra* and Syllabus Point 2 of *Conn, supra*, "[a]ll ambiguities in the [cancellation] notice will be resolved in favor of the insured." We hold that any cancellation notice that informs an ordinary person of the amount due is sufficiently ambiguous as to render the notice ineffective. Accordingly, because the insurer did not effectively cancel coverage under the first policy, the first policy remained in effect until July 7, 1993, and therefore, provided underinsurance coverage at the time of this accident on April 23, 1993. *Conn*, 190 W.Va. at 558, 439 S.E.2d at 423; *see also Pearson v. Nationwide Mutual Ins. Co.*, 325 N.C. 246, 382 S.E.2d 745 (1989).[2]

Because the amount of damages sustained by the insured has not been liquidated, this matter must be remanded to the Circuit Court of Cabell County for further proceedings consistent with this opinion.

Reversed and Remanded.

---

2. The parties have stipulated that if the first policy was in effect at the time of the accident providing underinsurance coverage up to $100,000, then coverage afforded under the second policy would be effective providing underinsurance coverage of an additional $100,000, aggregating a total of $200,000 available as underinsurance coverage in the absence of anti-stacking language in either policy. Because we hold that the first policy was not cancelled, we need not address any issue relating to the coverage under the second policy.