33 P.3d 530

George NORMAN, an individual, Plaintiff–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Defendant–Appellee.

No. 1 CA–CV 01–0105.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 25, 2001.

Ambrose Law Firm, P.C., by Scott A. Ambrose, Scottsdale, Attorneys for Plaintiff–Appellant.

The Cavanagh Law Firm, P.A., by Ralph E. Hunsaker, Christopher Robbins, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

SULT, Presiding Judge.

¶ 1 In this opinion, we construe Arizona Revised Statutes ("A.R.S.") § 20–1632.01 (Supp.2000), dealing with cancellation of an automobile insurance policy for non-payment of premium, to permit an insurance company to make such cancellations effective either upon mailing of a notice of cancellation or upon a later date provided in the notice. We also hold that a notice with a postponed cancellation date may contain an option for reinstatement of the policy by payment of overdue premium without rendering the notice ineffective as a matter of law to achieve cancellation. Finally, we reiterate the well-settled principle that a contract must exist before there can be a breach of the covenants of good faith and fair dealing implied in every contract. Because the trial court ruled correctly on each of these issues, we affirm its judgment.

## BACKGROUND

¶ 2 Norman had an automobile insurance policy with State Farm. On September 1, 1998, State Farm sent Norman a renewal billing for the six-month policy period of September 1, 1998 to March 1, 1999 that gave Norman the option of paying the six-month premium in two installments of $188.00 and $189.02. The due date for the first installment was October 5, 1998.

¶ 3 On October 20, 1998, Norman tendered a check to State Farm in the amount of $188.00. On October 30, the bank dishonored Norman's check because the account was closed and returned the check to State Farm. State Farm then sent Norman a cancellation notice on November 3, noting the returned check and stating that the policy would be cancelled effective November 16 if Norman failed to remit the amount due by that date. Norman received the notice but failed to make any payment by the November 16 cancellation date.

¶ 4 Two days later, on November 18, Norman was in an automobile accident and sustained property damage and personal injuries. After the accident, Norman went to the office of his State Farm agent and told the agent's assistant that he wanted to pay the premium reinstating his policy. The assistant told Norman that the policy would be reinstated as of that moment, and Norman then mentioned the earlier accident. The assistant informed Norman that he lacked coverage for the accident because the policy was cancelled on November 16 and was therefore not in effect when the accident occurred. Norman nevertheless paid $188.00 to reinstate his policy.

¶ 5 When State Farm subsequently denied Norman's claim for coverage, he brought this lawsuit alleging claims for breach of contract and breach of the implied covenants of good faith and fair dealing. State Farm moved for summary judgment, arguing that because it had properly cancelled Norman's policy, there was no coverage at the time of the accident. Norman opposed the motion and filed his own motion for partial summary judgment on the breach of contract claim, arguing that State Farm's cancellation violated Arizona insurance cancellation statutes and was therefore ineffective. The trial court granted summary judgment to State Farm, denied Norman's cross-motion, and entered final judgment. Norman timely appealed.

## ISSUES

### I.

A.R.S. § 20–1632.01(B) provides that when an insurance company cancels an automobile policy for non-payment of premium, the cancellation is effective on the date the notice is mailed. Must all such cancellations be effective on mailing or may an insurance company in its notice of cancellation postpone cancellation to a later date?

### II.

A notice of cancellation must clearly and unequivocally inform the policyholder of the insurer's intention to terminate coverage. Does the inclusion in the notice of a state-

ment of past-due premium and an option to the policyholder to continue coverage by paying that amount render the notice ambiguous as a matter of law and therefore ineffective to cancel the policy?

### III.

■ Every contract contains implied covenants of good faith and fair dealing. Given that the trial court found that there was no contract between the parties at the time State Farm denied coverage, did the trial court correctly find against Norman on his claims for breach of contract and bad faith?

■ ¶ 6 The trial court decided these issues on a grant of summary judgment. Because this appeal is from that judgment, and because in the process we must construe a statute, our review is conducted *de novo*. *Great American Mortgage, Inc. v. Statewide Insurance Co.*, 189 Ariz. 123, 125, 938 P.2d 1124, 1126 (App.1997).

### ANALYSIS

### I.

¶ 7 The crux of Norman's first argument is that the cancellation notice did not strictly comply with the Arizona statute governing cancellation for non-payment of premium, A.R.S. § 20–1632.01, and because of this non-compliance, the cancellation was ineffective. We begin by setting forth the pertinent subsections of the statute, highlighting the provisions implicated by the parties' arguments.

A. In motor vehicle insurance policies there shall be a provision that **the policyholder is entitled to a minimum grace period of seven days for the payment of any premium due except the first, during which grace period the policy shall continue in full force.** For the purposes of this subsection, an initial payment on the renewal of a policy is not a first payment of premium.

B. For any motor vehicle insurance policy cancelled or nonrenewed for nonpayment of premium by the insurer after the grace period, the insurer must mail a notice of cancellation or nonrenewal to the policyholder at his last address on record

with the insurer by first class mail. **The cancellation or nonrenewal is effective on the date the notice is mailed to the policyholder.** The notice shall include or be accompanied by a statement in writing of the reasons for such action by the insurer and a notice indicating the named insured's right to complain to the director of the insurer's action within ten days after receipt of the notice of the insured.

¶ 8 The cancellation notice sent to Norman on November 3 was entitled, "CANCELLATION NOTICE—NONPAYMENT OF PREMIUM." At the top of the notice, it stated "CANCELLATION DATE NOVEMBER 16, 1998" and noted in several places that the amount due was $188.00. The notice went on to state:

> We have not received the full amount required to keep this policy in force so in accordance with its cancellation provisions your policy identified in this notice is hereby canceled effective 12:01 A.M. standard time NOV 16 1998 due to non-payment of the premium. No further notice will be sent to you.

> Your payment was returned to us by the bank. We urge you to send us another remittance before the effective date of cancellation shown on this notice.

> We welcome the opportunity to provide your future insurance protection. Should you wish to reinstate this policy, please forward your payment immediately. Payment prior to the date and time of cancellation will reinstate your policy. If paid after the date and time, you will be informed whether your policy has been reinstated and if so, the exact date and time of reinstatement. There is no coverage between the date and time of cancellation and the date and time of reinstatement.

■ ¶ 9 Norman's argument proceeds in this fashion. He concedes that if the notice had simply cancelled coverage as of its November 3 mailing date, the notice would have effectively terminated the policy as of that date in accordance with subsection (B) of § 20–1632.01 making cancellation effective on the date the notice is mailed to the policyholder. However, by postponing the cancellation until November 16, State Farm failed

to strictly comply with the statute, such compliance being a requirement of the case law construing cancellation provisions in Arizona. *See, e.g., Grisham v. Five Star Insurance Co.,* 186 Ariz. 624, 628, 925 P.2d 1075, 1079 (App.1996). The consequence to State Farm of its laxity, Norman asserts, is that rather than being effective to cancel the policy, the notice instead created a new "premium due date" of November 16 which in turn implicated the "seven-day grace period" of subsection (A) of the statute. Because subsection (A) provides that a policyholder is entitled to at least seven days beyond the premium due date to pay the premium and thereby maintain the policy in force, Norman concludes that he actually had until November 23 to pay the premium.

¶ 10 Norman's argument is dependent upon reading subsection (B) to provide that a cancellation notice **must** terminate the policy as of the notice mailing date, with no option to the insurer for leniency toward its policyholder by extending termination to a later date. We acknowledge that when subsection (B) says that "[t]he cancellation ... is effective on the date the notice is mailed to the policyholder," this language could be read to limit the power to cancel as Norman argues. However, we do not see this result as plainly mandated by the statute's language. More importantly, we think reading the statute in this way would result in absurd consequences and would be contrary to what the legislature intended to accomplish with this enactment.

¶ 11 To illustrate, Norman argues that the notice attempting to establish a cancellation date of November 16 was ineffective for that purpose because under the "strict compliance" rule, the notice could have cancelled only upon mailing, namely November 3. Because the notice not only did not cancel but also gave a reinstatement option, it therefore operated to establish November 16 as a new premium due date with November 23 as the absolute last day to pay the premium. Norman continues the argument to its logical conclusion by acknowledging that if he did not pay even then, State Farm would be required to send yet another cancellation notice if it wished to terminate the policy. Throughout this entire period, of course, coverage would continue in force even though the original premium due date of October 5 would be almost two months past and no premium would ever have been paid for this extended coverage.

¶ 12 In our statutory construction process, we generally do not conclude that the legislature intended an absurdity. *Frye v. South Phoenix Volunteer Fire Co.,* 71 Ariz. 163, 168, 224 P.2d 651, 654 (1950). Nevertheless, according to Norman, the result for which he argues is exactly what our legislature intended. Norman reasons that the legislature sought to affirmatively prohibit notices of cancellation for non-payment that contained a postponed cancellation date, a so-called "advance notice," in order to avoid the "confusion" caused by such a procedure. He does not, however, explain why there should be any confusion from a clearly worded advance notice of an impending cancellation nor does he provide any legislative history that supports his assertion.

¶ 13 Belying Norman's assertions is A.R.S. § 20–1632 (Supp.2000), a companion statute governing cancellation of policies for reasons other than non-payment of premium. This statute does require advance notice of cancellation and illustrates that the legislature does not believe that advance notice carries any inherent risk of confusing policyholders. To the contrary, by requiring such notice, the legislature is likely presuming that cancellations other than for non-payment may be for reasons that are beyond the policyholders' control. Advance notice is therefore required to obviate the confusion that would surely arise if cancellation upon mailing were permitted in those circumstances, leaving policyholders unexpectedly without coverage and with no opportunity to obtain substitute coverage without an interruption. Thus, it can be said that advance notice is a tool the legislature regards as useful to prevent confusion, rather than as a source therefor, as Norman would have us believe.

¶ 14 We presume that the legislature did not include a provision for advance notice in § 20–1632.01 simply because one is not needed. Non-payment of premium is wholly within the policyholder's knowledge and control. When a notice of cancellation for non-

payment is mailed and the policy thereby cancelled, the policyholder cannot claim unfair surprise. To the contrary, the policyholder knows or should know that he has not paid the premium and advance notice with that message would not in itself aid him in maintaining coverage. If he could have paid the premium, presumably he would have. If he cannot pay, advance notice does nothing to change that fact. In light of these considerations, we conclude that the legislature determined that policyholders did not need the protection of advance notice for non-payment cancellations and that it would permit insurance companies to cancel for non-payment effective upon the mailing of a notice.

¶ 15 Saying the legislature **permits** cancellation upon mailing, however, is not the same as saying the legislature **requires** it. While the cancellation statute makes it clear that an insurance company has the right to cancel upon mailing, we do not read subsection (B) as making this result mandatory. The language "cancellation is ... effective on the date the notice is mailed" does not preclude an interpretation that permits an insurance company to forego the right to cancel upon mailing and instead send an advance notice that extends cancellation to a later date. Such an interpretation encourages a company to give a helping hand to its policyholder while at the same time continuing coverage during the pending cancellation period, thereby affording protection to the public that would otherwise not exist if cancellation upon mailing were the only option.

■ ¶ 16 The doctrine of "strict compliance" does not dictate a contrary result. This simply means that an insurer must strictly comply with whatever the requirements of the statute may be, whether as plainly expressed by the legislature in the wording of the statute or as necessarily interpreted by a court. We believe Norman confuses "strict compliance" with "strict construction" when he insists upon interpreting § 20–1632.01(B) as requiring cancellation to be effective upon mailing. The narrow reading of subsection (B) espoused by Norman would disserve the policyholders of this state as well as undercut the long-established policy underlying Arizona's mandatory automo-

bile insurance legislation of protecting the motoring public from the financial hardship that can result from the use of automobiles by financially irresponsible persons. *Schecter v. Killingsworth*, 93 Ariz. 273, 280, 380 P.2d 136, 140 (1963).

■ ¶ 17 We reject Norman's interpretation of § 20–1632.01(B) and find that the language of that subsection making cancellation for non-payment of premium effective upon mailing the notice of cancellation is permissive. Consequently, we hold that an insurer may elect to send a notice of cancellation that cancels the policy at a date later than the date of mailing, so long as the notice clearly and unequivocally expresses the insurance company's intention to cancel, as discussed in the next section of this opinion.

**II.**

■ ¶ 18 Norman's second argument is similar to his first, but rather than being based on the language of the statute, it focuses on State Farm's inclusion in the cancellation notice of an option to pay the premium before the stated cancellation date. According to Norman, inclusion of this option created an ambiguity as a matter of law that must be resolved against State Farm by a finding that the notice was ineffective to cancel and that coverage under the policy therefore continued through at least November 23.

¶ 19 As support for this proposition, Norman principally relies on *Elkins v. State Farm Mutual Automobile Insurance Co.*, 197 W.Va. 412, 475 S.E.2d 504 (1996). In *Elkins*, the notice of cancellation stated that it was being issued for non-payment of premium and that the policy was being cancelled for non-payment on a date 35 days following the date of the notice. *Id.* at 505. In the box labeled "CANCELLATION DATE" was that date together with a dollar figure labeled "AMOUNT DUE." *Id.* However, unlike the notice in this case, there was no additional language explaining why the amount due was referenced or what, if anything, the policyholder could do before the stated cancellation date to maintain coverage in effect. *Id.* As here, the insured did not pay by the cancellation date, became involved in an acci-

dent, and then paid the overdue premium. *Id.* at 505–06.

¶ 20 The *Elkins* court applied the rule that a cancellation notice must be "clear, definite and certain," and that any ambiguity regarding the company's intent to cancel would be resolved in favor of the insured. *Id.* at 506. The court then found that inclusion of a reference to an amount due would lead an ordinary person to believe that payment of that sum would keep the policy in force and avoid cancellation. *Id.* at 507. The court therefore found that the notice of cancellation was not clearly and definitely a cancellation and resolved the perceived ambiguity against the insurer by continuing the policy in effect, thereby providing coverage for the accident. *Id.* The court specifically held that

> any cancellation notice that informs an ordinary person of the amount due is sufficiently ambiguous as to render the notice ineffective.

*Id.*

¶ 21 Norman reads this holding as establishing a rule that any mention of an amount due in a cancellation notice, no matter what instructions and explanations might accompany that item in the notice, renders the notice a nullity as a cancellation mechanism. We are disinclined, however, to accord *Elkins* such sweeping effect. Rather, we read it in the context of its factual setting and thereby limit it to its operative facts; namely, that when a notice's reference to an amount due is unaccompanied by any explanation, this creates uncertainty for the policyholder that results in a disqualifying ambiguity. We consider *Elkins* of persuasive value only when considered on its facts, and because those facts differ significantly from the facts in this case, we do not find *Elkins* helpful.

¶ 22 If *Elkins* did stand for the broad proposition Norman asserts, we would reject it entirely. Such a rule would hinder, rather than advance, Arizona's public policy imbedded in our insurance legislation that encourages the purchase **and** retention of coverage by automobile owners. When an insurance company forgoes its right to cancel upon mailing, and instead postpones cancellation to give its policyholder the opportunity to keep the policy in force, such action clearly promotes retention of that policy. Equally important, it also affords protection to the traveling public by voluntarily extending coverage during the pending cancellation period, a period when coverage otherwise would not exist. To prohibit this practice by adopting a rule of law that strips an insurance company of the ability to aid its policyholders to retain coverage does nothing to advance the public interest and may well harm the policyholder.[1]

¶ 23 We hasten to explain that inclusion of a premium payment option in a notice of cancellation may still create an ambiguity that could vitiate an attempted cancellation. While we do not find *Elkins* persuasive on the main point, we do agree with the principle espoused therein that a notice cancelling coverage under an automobile policy must be clear and unequivocal, and that the insurance company's "expression of intent to cancel the policy ... [must] be apparent to the ordinary person." *Id.* at 506; *see* 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 32.9, at 32–15 (3d ed.1995) (a notice of cancellation must definitely, clearly, and unequivocally inform the insured of the insurer's intent to cancel). Thus, every cancellation notice, whether it includes a reinstatement option or not, must still meet the "clear and unequivocal" test by informing the policyholder in no uncertain terms of the insurance company's intent to cancel. Moreover, if it does include a reinstatement option, it must also clearly and unequivocally

---

1. Norman has also cited *Pennsylvania National Mutual Casualty Insurance Co. v. Person,* 164 Ga.App. 488, 297 S.E.2d 80 (1982), and *Mitchell v. Burnett,* 1 Ill.App.3d 24, 272 N.E.2d 393 (1971), as support for his argument. In *Person,* the court found the cancellation notice for non-payment of premium confusing and ineffective because it was sent *before* the premium was even due, and was an attempt by the insurer to circumvent statutory notice and grace period requirements for cancellation of insurance. 297 S.E.2d at 82. Although deciding an Arizona issue, *Mitchell* applied Illinois law and, in any event, the case predates the promulgation of A.R.S. § 20–1632.01. *See* 1987 Ariz. Sess. Laws, ch. 137 § 2. We therefore find these cases inapposite.

inform the policyholder of the mechanics of reinstatement as well as the consequences of failing to do so. Each cancellation notice must be judged individually by its language and the circumstances in which it is issued to determine whether any disqualifying ambiguity has been created.

¶ 24 Turning to the notice in this case, we have no difficulty in finding that there is no ambiguity regarding State Farm's intention to cancel on the date stated nor regarding what Norman could do to keep the policy in force. The notice clearly set forth the effective date of cancellation in capital letters, and tracked the cancellation requirements of § 20–1632.01. The notice also explained to Norman that (i) his premium check had been returned for insufficient funds, (ii) his policy was being cancelled for non-payment of premium, (iii) he could reinstate the policy if he paid the outstanding premium before the cancellation date, and (iv) there was no coverage between the date of cancellation and the date of reinstatement if payment was made *after* the cancellation date. No ordinary person receiving this notice would be confused regarding how to reinstate and what would happen if a reinstatement payment were not made by the cancellation date.

### III.

¶ 25 The last issue in the case is the correctness of the trial court's grant of summary judgment to State Farm on Norman's claims for breach of contract and bad faith. Given our ruling on the first two issues, we may dispose of this contention summarily. While every contract contains implied covenants of good faith and fair dealing, such covenants presume the existence of a valid contract. *Johnson International, Inc. v. City of Phoenix*, 192 Ariz. 466, 473–74, ¶ 46, 967 P.2d 607, 614–15 (App.1998). Because Norman's contract for insurance ceased to exist on November 16, 1998, State Farm had no contract it could breach nor any obligation to Norman under implied covenants of good faith and fair dealing. Therefore, the trial court was correct to grant judgment to State Farm on these claims.

### CONCLUSION

¶ 26 The trial court correctly granted judgment to State Farm on all issues. We therefore affirm the judgment of that court. State Farm requests an award of its attorneys' fees on appeal pursuant to A.R.S. § 12–341.01(A) (Supp.2000). In the exercise of our discretion, we grant this request and an award of attorneys' fees will be made upon State Farm's compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

CECIL B. PATTERSON, JR., Judge, and SHELDON H. WEISBERG, Judge, concurring.