A08A0861. AUTO-OWNERS INSURANCE COMPANY
v. ALEXANDER.
(667 SE2d 628)

SMITH, Presiding Judge.

Auto-Owners Insurance Company ("Auto-Owners") appeals from the grant of summary judgment to the son of its insured, Melanie Alexander, on the issue of automobile insurance coverage. Auto-Owners contends that Alexander's insurance policy was cancelled for "nonpayment of premium due." For the reasons that follow, we agree with the trial court and affirm.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. *Allstate Ins. Co. v. Ackley*, 227 Ga. App. 104 (488 SE2d 85) (1997). We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences favorably to the nonmovant. Id.

So viewed, the record shows that Melanie Alexander obtained automobile insurance for two vehicles through an Auto-Owners insurance policy. On November 11, 2002, Auto-Owners issued a premium notice to Alexander requiring a $201.83 minimum payment. Although the notice indicated that the premium was due on December 1, 2002, Alexander mailed a check for the minimum amount to Auto-Owners on December 8.

When Auto-Owners had not received payment by December 12, 2002, it began the process for terminating Alexander's policy. It generated a notice stating that, as of January 8, 2003, the policy would be cancelled for "nonpayment of premium due." It also prepared a separate offer to reinstate the policy if Alexander made a minimum payment of $445.52 by January 8. Without dispute, however, these documents were not mailed to Alexander until December 13, 2002. Moreover, the record shows that Auto-Owners began processing Alexander's $201.83 check on December 13, revealing that it had received the payment at least by that date.

Alexander's check cleared her account on December 16, 2002. That same day, Auto-Owners issued Alexander a shortage notification, indicating that her $201.83 payment did not cover the $445.52 minimum required by the reinstatement offer. The notification further stated that to maintain coverage, she was required to pay the $243.69 balance by January 8, 2003. Alexander mailed this addi-

tional payment to Auto-Owners, but not until January 10, 2003. Two days later, on January 12, 2003, Alexander's son collided with another vehicle while driving one of the cars insured by Auto-Owners.

When Alexander reported the collision to her insurance agent, he informed her that the Auto-Owners policy had been cancelled as of January 8, 2003, leaving any losses sustained in the wreck without coverage. In connection with the cancellation, Auto-Owners refunded certain "unearned" premiums — including the $243.69 payment made on January 10 — to Alexander.

Approximately 18 months later, the adverse driver from the January 12, 2003 collision sued Alexander's son for damages. The son brought Auto-Owners into the suit as a third-party defendant, arguing that his mother's insurance policy covered any loss. Auto-Owners and Alexander's son subsequently filed cross-motions for summary judgment on the coverage issue. Finding coverage under the policy, the trial court granted the son's motion. Auto-Owners now challenges that finding, claiming that it cancelled Alexander's policy prior to the accident.

Under OCGA § 33-24-44, an insurance company may cancel a policy for nonpayment of premiums after delivering or mailing written notice of cancellation to the insured at least ten days prior to the effective cancellation date. See OCGA § 33-24-44 (d). The notice, however, is only valid if premiums are due. As we have found, "notice of cancellation for failure to pay premiums, sent before the premium is actually due, is not sufficient to effect a cancellation." (Citation omitted.) *Atlanta Cas. Co. v. Boatwright*, 244 Ga. App. 36, 38 (1) (534 SE2d 516) (2000).

Without question, Alexander failed to pay her premium by the December 1, 2002 deadline. Auto-Owners, however, did not seek to cancel her policy at that point, as it could have done. Instead, it waited until December 13, 2002, to mail the cancellation notice, and the record shows that by that date, Auto-Owners had received Alexander's payment. The December 1, 2002 premium, therefore, was no longer "past due" or unpaid when Auto-Owners sought to end Alexander's coverage.

On appeal, the insurer does not dispute that it had Alexander's check by December 13. Instead, it argues that it prepared the cancellation notice on December 12, 2002, before Alexander's payment arrived. A cancellation notice, however, becomes valid only "upon deposit in the U. S. mails with the issuance of an appropriate receipt." *State Farm Mut. Auto. Ins. Co. v. Harris*, 177 Ga. App. 826, 828 (341 SE2d 472) (1986); see also OCGA § 33-24-45 (d) (2002) ("No notice of cancellation of a policy . . . shall be effective unless mailed or delivered as prescribed in Code Section 33-24-44.").

Regardless of when it was generated, the cancellation notice could not take effect until the date of mailing, at which point Auto-Owners had received payment satisfying Alexander's past due balance. Under these circumstances, cancellation for nonpayment was improper.[1] Compare *Boatwright*, supra, 244 Ga. App. at 39 (1) (summary judgment properly denied where question of fact remained "as to whether a premium was actually due when the purported notice of cancellation was sent").

Auto-Owners further argues that despite Alexander's $201.83 payment, she owed an additional $243.69 as of December 13, 2002. According to the insurer, Alexander had not fully satisfied her premium obligation on that date, bringing the cancellation notice within the statutory requirements. This additional payment, however, related to *reinstatement* of her policy following cancellation. Since the cancellation notice and alleged cancellation were ineffective, Alexander was not required to "reinstate" her policy.

Moreover, even if the $243.69 amount constituted a new premium, Auto-Owners has not shown that payment for this premium was past due on December 13, 2002. In fact, the reinstatement offer — the first document to mention this additional payment — instructed Alexander to pay by January 8, 2003, to avoid cancellation. The record thus shows that the December 13, 2002 cancellation notice *preceded* the due date for this new premium. As such, it was a demand for payment, rather than a valid notice of cancellation under OCGA § 33-24-44. See *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Person*, 164 Ga. App. 488, 489 (1) (297 SE2d 80) (1982) (purported cancellation notice given before premium due was a demand for payment, not a notice of cancellation).

We recognize that Alexander paid her automobile insurance premiums late on several occasions, a dangerous practice that potentially jeopardized her coverage. Auto-Owners, however, failed to effectively cancel the policy for nonpayment. Accordingly, the trial court properly granted summary judgment to Alexander's son and denied Auto-Owners' cross-motion for summary judgment on the issue of coverage. See *Person*, supra, 164 Ga. App. at 490.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

---

[1] We find no merit in Auto-Owners' claim that because it *might* have placed the cancellation notice in the mail on December 13 minutes or hours before Alexander's payment arrived that same day, the cancellation was valid. In our view, this type of hair-splitting analysis cannot support cancellation under OCGA § 33-24-44, a provision that must be construed against the insurance company. See *Ackley*, supra, 227 Ga. App. at 106 (2) ("The methods for proper cancellation of insurance policies set forth in OCGA § 33-24-44 are mandatory and strictly construed against the insurer.") (citation omitted).

DECIDED AUGUST 28, 2008.

*John T. Croley, Jr.*, for appellant.
*William S. Stone, Andy J. Williams, Jr.*, for appellee.