S09Q1613. REYNOLDS et al. v. INFINITY GENERAL INSURANCE COMPANY.
(694 SE2d 337)

</div>

HINES, Justice.

This case is before the Court on a certified question from the United States Court of Appeals for the Eleventh Circuit in litigation involving the effectiveness of a notice of cancellation of a commercial automobile insurance policy.[1] *Infinity Gen. Ins. Co. v. Reynolds*, 570 F3d 1228 (11th Cir. 2009). The question certified is:

> Is a notice of cancellation, properly given after the premium is past due, ineffective because it provides an opportunity for the insured to keep the policy in force by paying the past-due premium within the statutory ten-day period?

---

[1] 1983 Ga. Const., Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9.

We answer the question in the negative.

## BACKGROUND

The facts as set forth by the Eleventh Circuit are the following. On June 5, 2006, Russell Graham purchased a commercial automobile insurance policy from Infinity General Insurance Company, formerly known as Coventry Insurance Company ("Infinity"). While operating the insured vehicle on August 2, 2006, Graham's son was involved in a collision, which took the lives of his two passengers, Joey Lee Reynolds and Dustin Edward Lloyd. Infinity filed a declaratory judgment and/or interpleader action, claiming that a July 10, 2006 "CANCELLATION NOTICE" sent to the insured was effective, and therefore, that the policy was not in force at the time of the collision; the defendants in this action included Graham and the estates and widows of the two decedents.[2]

The body of the notice contained the following language:

AS OF 07/10/2006, WE HAVE NOT RECEIVED YOUR PAYMENT.

YOU ARE HEREBY NOTIFIED IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE ABOVE MENTIONED POLICY, AND IN ACCORDANCE WITH THE LAW, THAT YOUR INSURANCE POLICY WILL CEASE AT 11:59 P.M. ON THE CANCELLATION DATE MENTIONED ABOVE, UNLESS WE RECEIVE YOUR PAYMENT BEFORE THE CANCELLATION DATE.

IF THE PREMIUM AMOUNT LISTED ON THIS NOTICE IS NOT RECEIVED BY THE COMPANY BEFORE THE CANCELLATION DATE SPECIFIED, YOUR INSURANCE WILL CEASE AT 11:59 P.M. ON THAT DATE.

IF PAYMENT IS MADE BY CHECK, DRAFT, OR OTHER ORDER OF PAYMENT AND PAYMENT IS NOT HONORED UPON FIRST PRESENTATION FOR PAYMENT, YOUR COVERAGE WILL BE NULL AND VOID AND YOUR INSURANCE WILL CEASE AS OF THE CANCELLATION DATE SHOWN ABOVE.

---

[2] The Reynolds and Lloyd defendants are plaintiffs in two underlying suits seeking damages in wrongful death and survivorship actions.

The header on the notice stated, "CANCELLATION NOTICE, NONPAYMENT OF PREMIUM" and the cancellation date of July 25, 2006 was set out in a small box at the top of the notice and again in another small box at the bottom of the notice. Also, immediately above the language in the body, the notice stated "NONPAYMENT NOTIFICATION," and on the notice was stamped in large letters "NON PAY NOTICE." It also contained payment options and a detachable payment stub to be returned in the event a premium payment was remitted.

## PROCEEDINGS IN FEDERAL COURT

The District Court found as fact that Infinity never received Graham's alleged premium payment, that the premium was overdue after July 5, 2006, and that the July 10, 2006 notice effectively cancelled the policy on July 25, 2006. Thus, the District Court granted summary judgment in favor of Infinity. The several defendants other than the insured, Graham, appealed to the Eleventh Circuit. In the Eleventh Circuit, appellants relied upon *State Farm Mut. Auto. Ins. Co. v. Drury*, 222 Ga. App. 196 (474 SE2d 64) (1996), and *Pennsylvania Nat. Mut. Cas. Ins. v. Person*, 164 Ga. App. 488 (297 SE2d 80) (1982), to argue that the instant notice was a demand for payment and not effective to cancel the policy at issue as of July 25, 2006. Infinity urged that the language from the cited cases was dicta; that under OCGA § 33-24-44, the cancellation could not be effective for at least ten days after the notice of cancellation is given; that the obvious purpose of the statute is to provide the insured with an opportunity to make the premium payment and keep the policy in force, or to make other insurance arrangements; that compliance with the statute requires giving the insured the opportunity to pay the premium within the ten-day time period and keep the policy in force; and that if appellants' position was correct, any cancellation notice that complies with the ten-day statutory period would be ineffective, rendering cancellation impossible as a practical matter. The Eleventh Circuit certified the above question, inter alia, because it perceived "no clear, controlling precedent in the decisions of the Georgia courts." *Infinity Gen. Ins. Co. v. Reynolds*, supra.

## DISCUSSION

There is little question that an insurance company may cancel an automobile insurance policy for nonpayment of premiums. See

OCGA § 33-24-45 (c) (1).[3] And, it may do so after timely delivering or mailing written notice of cancellation to the insured as provided in OCGA § 33-24-44,[4] the statute governing the cancellation of insur-

---

[3] OCGA § 33-24-45 (c) (1) provides:
. . .
(c) No notice of cancellation of a policy issued for delivery in this state shall be mailed or delivered by an insurer or its agent duly authorized to effect such cancellation, except for one or more of the following reasons:

(1) The named insured failed to discharge when due any of his obligations in connection with the payment of premiums on such policy or any installment of premiums or the renewal of premiums, whether payable directly to the insurer or indirectly to the agent; . . .

[4] OCGA § 33-24-44 provides:

(a) Except as otherwise provided in this chapter, cancellation of a policy which by its terms and conditions may be canceled by the insurer or its agent duly authorized by the insurer to effect such cancellation shall be accomplished as prescribed in this Code section.

(b) Written notice stating the time when the cancellation will be effective, which shall not be less than 30 days from the date of mailing or delivery in person of such notice of cancellation or such other specific longer period as may be provided in the contract or by statute, shall be delivered in person or by depositing the notice in the United States mails to be dispatched by at least first-class mail to the last address of record of the insured and of any lienholder, where applicable, and receiving the receipt provided by the United States Postal Service or such other evidence of mailing as prescribed or accepted by the United States Postal Service. For the purposes of this subsection, notice to the lienholder shall be considered delivered or mailed if, with the lienholder's consent, it is delivered by electronic transmittal or facsimile. Any irregularity in the notice to the lienholder shall not invalidate an otherwise valid cancellation as to the insured.

(c) (1) Any unearned premium which has been paid by the insured shall be refunded to the insured on a pro rata basis as provided in this Code section. If the return does not accompany notice of cancellation, then such return shall be made on or before the cancellation date either directly to the named insured or to the insured's agent of record. In the event the insurer elects to return such unearned premium to the insured via the insured's agent of record, such agent shall return the unearned premium to the insured either in person or by depositing such return in the mail within ten working days of receipt of the unearned premium, or within ten working days of notification from the insurer of the amount of return of unearned premium due, or on the effective date of cancellation, whichever is later. If the insured has an open account with the agent, such return of unearned premium may be applied to any outstanding balance and any remaining unearned premium shall be returned to the insured either in person or by depositing such return in the mail within ten working days of receipt of the unearned premium, or within ten working days of notification from the insurer of the amount of return of unearned premium due, or on the effective date of cancellation, whichever is later.

(2) Paragraph (1) of this subsection shall not apply if an audit or rate investigation is required or if the premiums are financed by a premium finance company. If an audit or rate investigation is required, then the refund of unearned premium shall be made within 30 days after the conclusion of the audit or rate investigation. If the premiums are financed by a premium finance company, any unearned premiums shall be tendered to the premium finance company within ten working days after cancellation.

(3) Any insurer or agent failing to return any unearned premium as prescribed in paragraphs (1) and (2) of this subsection shall pay to the insured a penalty equal to 25 percent of the amount of the return of the unearned premium and interest equal to 18 percent per annum until such time that proper return has been made,

ance policies generally. When the statute is used by the insurance company in order to effect a cancellation of insurance coverage, the language of the statute is to be strictly construed against the insurer, inasmuch as the methods adopted by the General Assembly are mandatory and intended to assure that the insured has actual notice of cancellation. *Travelers Indem. Co. v. Guess*, 243 Ga. 559, 560 (1) (255 SE2d 55) (1979); *Allstate Ins. Co. v. Ackley*, 227 Ga. App. 104, 106 (2) (488 SE2d 85) (1997). The statutory requirements were designed to give the insurer the responsibility of doing everything within its power to make certain that the insured is placed on notice that the insurance coverage is being cancelled. *Favati v. National Property Owners Ins. Co.*, 153 Ga. App. 723, 724-725 (266 SE2d 359)

---

which penalty and interest must be paid at the time the return is made; provided, however, the maximum amount of such penalty and interest shall not exceed 50 percent of the amount of the refund due. Failure to return any unearned premium shall not invalidate a notice of cancellation given in accordance with subsection (b) of this Code section.

(d) When a policy is canceled for failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums for a policy or any installment of premiums due, whether payable directly to the insurer or indirectly to the agent, or when a policy that has been in effect for less than 60 days is canceled for any reason, the notice requirements of this Code section may be satisfied by delivering or mailing written notice to the named insured and any lienholder, where applicable, at least ten days prior to the effective date of cancellation in lieu of the number of days' notice otherwise required by this Code section. For the purposes of this subsection, notice to the lienholder shall be considered delivered or mailed if, with the lienholder's consent, it is delivered by electronic transmittal or facsimile. Any irregularity in the notice to the lienholder shall not invalidate an otherwise valid cancellation as to the insured.

(d.1) The notice requirements of this Code section shall not apply in any case where a binder or contract of insurance is void ab initio for failure of consideration.

(e) Notice to the insured shall not be required by this Code section when a policy is canceled by an insurance premium finance company under a power of attorney contained in an insurance premium finance agreement which has been filed with the insurer in accordance with the provisions of Chapter 22 of this title. However, the insurer shall comply with the provisions of subsection (d) of Code Section 33-22-13 pertaining to notice to a governmental agency, mortgagee, or other third party. Such notice shall be delivered in person or by depositing the notice in the United States mails to be dispatched by at least first-class mail to the last address of record of such governmental agency, mortgagee, or other third party and receiving the receipt provided by the United States Postal Service or such other evidence of mailing as prescribed or accepted by the United States Postal Service.

(f) Cancellation by the insured shall be accomplished in accordance with Code Section 33-24-44.1.

(g) Any unearned premium which has been paid by the insured may be refunded to the insured on other than a pro rata basis if:

(1) The cancellation results from failure of the insured to pay, when due, any premium to the insurer or any amount, when due, under a premium finance agreement;

(2) The policy contains language which specifies that a penalty may be charged on unearned premium; and

(3) The method of computing such penalty is filed with the Commissioner in accordance with Chapter 9 of this title.

(1980). And, until the statutory notice requirements are met, the policy remains in effect. *Nationwide Mut. Fire Ins. Co. v. Bridges*, 140 Ga. App. 242 (230 SE2d 491) (1976).

As noted, under OCGA § 33-24-44 an insurance company is entitled to terminate an automobile insurance policy because of the nonpayment of premiums after delivering or mailing written notice of the cancellation to the insured in accordance with the statutory requirements. *Auto-Owners Ins. Co. v. Alexander*, 293 Ga. App. 459, 460 (667 SE2d 628) (2008). However, OCGA § 33-24-44 itself does not provide that the notice be in any particular form. *Chambers v. Washington Nat. Ins. Co.*, 66 Ga. App. 509 (17 SE2d 899) (1941). Accord *Motors Ins. Corp. v. Woodcock*, 394 So2d 485, 487 (Fla. App. 1981). In the absence of a regulatory or policy provision outlining the method of policy cancellation notice,[5] in order to be legally sufficient, what is required is that the notice positively and unequivocally state that the cancellation is taking place. *North Carolina Mut. Life Ins. Co. v. Bailey*, 185 Ga. App. 191, 192 (2) (363 SE2d 586) (1988). It must be a clear and unambiguous statement to the insured that coverage is being terminated. Id. Consequently, an assessment of the sufficiency of a notice of cancellation should depend upon the language of that particular cancellation notice. *Chapman v. Leger*, 405 So2d 604 (La. App. 1981). The initial inquiry then is how the present document measures up to the requirements for an effective cancellation, that is, whether it clearly, unambiguously, and un-equivocally puts the insured on notice that the insurance coverage at issue is ending.

The present notice plainly states no less than three times that coverage under the policy will cease on a certain time and date. And, it explains why coverage is being cancelled — because the insured has failed to pay for the policy. There is nothing in the notice to indicate that the cessation of coverage will not occur; there are no misleading or confusing statements. The mere fact that the notice contains an option for the insured to avoid the imminent cancellation does not alter the clear statement to the policyholder that coverage is being terminated because the premium was not timely paid. Nonetheless, appellants in the Eleventh Circuit cite principally *State Farm Mut. Auto. Ins. Co. v. Drury*, supra, and *Pennsylvania Nat. Mut. Cas. Ins. v. Person*, supra, which they maintain compel the conclusion that the notice of cancellation, because of what they describe as ambiguity resulting from the inclusion of an option to pay the overdue premium, is instead merely a demand for payment of

---

[5] No policy provision regarding the notice of cancellation is at issue in this certified question.

such premium, and therefore, is ineffective to serve as the notice necessary to terminate coverage. But, neither *State Farm Mut. Auto. Ins. Co. v. Drury,* nor *Pennsylvania Nat. Mut. Cas. Ins. v. Person,* nor other Georgia precedent requires that the notice of cancellation be construed as a demand for payment; in fact, quite the contrary. In *Pennsylvania Nat. Mut. Cas. Ins. v. Person,* the Court of Appeals indeed found that the purported notice of cancellation was in reality a demand for payment.[6] But, it did so not because of the mere fact that the notice contained a statement regarding the option of payment of the premium installment in order to avoid cancellation of the policy; the Court of Appeals found the document ineffective as a notice of cancellation because it was not given to the insured upon the failure to pay the premium when due, but rather the purported notice of cancellation was given *before* the premium was due. Id. at 489 (1). As the Court of Appeals explained, "[t]here was no reason to cancel the policy until *after* the premium became due and payable." Id. (Emphasis supplied.) Thus, the premium payment option in the context of the premature statement regarding termination of coverage rendered the document, at best, ambiguous, and well short of the required positive and unequivocal statement of the present intent to cancel insurance coverage.[7] *North Carolina Mut. Life Ins. Co. v. Bailey* at 192 (2). As in *Pennsylvania Nat. Mut. Cas. Ins. v. Person,* in *State Farm Mut. Auto. Ins. Co. v. Drury,* the attempted notice of cancellation was not given to the insured upon the insured's failure to pay the premium "when due." *State Farm Mut. Auto. Ins. Co. v. Drury,* at 199 (3).

Appellants also rely upon the finding of ineffective cancellation because of ambiguity in *North Carolina Mut. Life Ins. Co. v. Bailey.* However, the situation in that case was very different from the present one; it involved the attempted cancellation of a life insurance policy found to be ineffective because the notice of cancellation was

---

[6] The insurer argued that the insurance policy had been cancelled effective November 7, 1980; the notice was mailed on October 8, 1980 and was entitled "Installment Statement of Premium Due"; it stated on its face:

PAY THE AMOUNT DUE BEFORE THE INSTALLMENT DUE DATE SHOWN OR THIS STATEMENT BECOMES A NOTICE OF CANCELLATION EFFECTIVE 11 07 80 12:01 A.M. STANDARD TIME. PROVIDING ALL PRIOR OUTSTANDING BILLINGS HAVE BEEN PAID BY THEIR DUE DATES. NO FURTHER NOTICE WILL BE GIVEN[;]

and the installment due date was November 7, 1980. Id. at 488 (1).

[7] In *Norman v. State Farm Mut. Auto. Ins. Co.,* 33 P3d 530 (Ariz. App. 2001), the Court of Appeals of Arizona rejected appellant Norman's argument that the inclusion of reference to a premium amount due in a notice of cancellation rendered the notice a nullity as a mechanism for cancellation, and expressly observed that, "[i]n *Person,* the [Court of Appeals of Georgia] found the cancellation notice for non-payment of premium confusing and ineffective because it was sent before the premium was even due, and was an attempt by the insurer to circumvent statutory notice and grace period requirements for cancellation of insurance." Id.

sent to the agent of the insurance company without notifying the policyholder. It was not a situation in which a purported notice of cancellation was rejected because it was intrinsically ambiguous. Id. at 192 (2). In direct contrast to the Georgia precedents urged by appellants, in *Daniels v. Allstate Ins. Co.*, 162 Ga. App. 758 (293 SE2d 39) (1982), the Court of Appeals upheld a notice of cancellation for nonpayment of premium which contained an option for payment; it did so because the coverage at issue was purchased as a six-month policy which had lapsed or expired before the six months passed because the insured failed to pay an increased premium for adding a named insured, and consequently, the additional amount of the premium had been due and payable prior to the notice of cancellation. See *Pennsylvania Nat. Mut. Cas. Ins. v. Person*, supra at 489 (1). Moreover, in *Southern Ins. Co. v. Walker*, 184 Ga. App. 369 (361 SE2d 502) (1987), the Court of Appeals considered the situation in which the insurer mailed a notice of cancellation of an automobile insurance policy to the insured indicating, inter alia, that the cancellation was effective on a set date, but that the insurer would consider reinstating the policy upon payment of an additional premium prior to the cancellation date. The Court expressly distinguished *Pennsylvania Nat. Mut. Cas. Ins. v. Person*, stating:

> In *Person*, the purported notice of cancellation was invalid because the reason for cancellation, i.e., nonpayment of premium, had not occurred. In the instant case, however, the declared reason for cancellation was a fait accompli prior to the notice of cancellation. The fact that the notice of cancellation left open the possibility of reinstatement of the policy did not invalidate that cancellation notice.

Other jurisdictions have likewise refused to find notices of cancellation, sent after the premium is past due ineffective simply because the notice provides the insured the opportunity to keep the policy in force by paying the overdue premium before the stated cancellation date. See, e.g., *Metropolitan Group Property and Cas. Ins. Co. v. Lopes*, 826 A2d 87 (R.I. 2003) (notice of cancellation for nonpayment of automobile insurance premium was clear and unequivocal in stating that by a certain date, the insurer would no longer be bound by policy despite reference to amount due in order to reinstate policy); *Johnson v. Williams*, 828 So2d 90 (La. App. 2002) (notice language was clear, unequivocal and unambiguous even though it provided insured opportunity to then pay premium); *Norman v. State Farm Mut. Auto. Ins. Co.*, 33 P3d 530 (Ariz. App. 2001) (notice of cancellation was clear and unequivocal even though there was an option to pay the premium before the cancellation

date); *Motors Ins. Corp. v. Woodcock*, supra (notice was not ambiguous as a matter of law; "[i]ts certainty is unaffected by the fact that some action on the part of the insured could be taken to prevent cancellation").

Finally, concerns of public policy militate against finding, as a matter of law, that a notice of cancellation, given after the premium is past due, is rendered equivocal or ambiguous, and thus, fatally flawed, solely by the inclusion of a payment option to reinstate coverage. As noted in *Metropolitan Group Property and Cas. Ins. Co. v. Lopes*, supra, such a ruling in this case would undercut the encouragement of the retention of automobile insurance policies, which afford protection to the traveling public. Id. at 91. Simply, "[t]here is no sound reason why the insured should be denied an opportunity to avoid a clear, unambiguous cancellation and be advised of the existence of this opportunity in the notice of cancellation." *Hemperly v. Aetna Cas. & Surety Co.*, 516 So2d 1202, 1207 (La. App. 1987).

*Question answered. All the Justices concur, except Hunstein, C. J., Carley, P. J., and Benham, J., who dissent.*

NAHMIAS, Justice, concurring.

This is a close case. Underlying the specific issue presented, however, is the clear objective of the State's mandatory automobile liability insurance system, which is to ensure that all vehicles are insured at all times for the protection of the public as well as their drivers and passengers. See OCGA § 33-34-4; *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 710 (300 SE2d 673) (1983) ("The clear legislative intent of [the Georgia Motor Vehicle Accident Reparations Act] is to require all motor vehicle owners to carry no-fault insurance. . . ."). One aspect of this system is the requirement that automobile insurers notify insureds in writing of the cancellation of their policies due to nonpayment of premiums "at least ten days prior to the effective date of cancellation." OCGA § 33-24-44 (d). The clear objective of this provision is to give insureds a grace period of at least ten days to obtain new insurance, preventing gaps in coverage.

OCGA § 33-24-44 does not specify any particular wording or format that must be used in a notice of cancellation. Compare OCGA § 33-24-45 (e) (5), (6) (reciting specific notice language that must appear in certain notices of nonrenewal). It simply requires that the notice state "the time when the cancellation will be effective." OCGA § 33-24-44 (b). Everyone agrees that the notice must be clear, unambiguous, and unequivocal, and I agree with the majority that the notice at issue in this case meets that test. See Majority Op. at 87-88, 91-92.

The major point of disagreement between the majority and dissenting opinions is whether a cancellation notice must also be

"unconditional" in order to be effective. The dissenting opinion says yes and argues that a notice of cancellation is ineffective when it offers continuation of the policy *if* the overdue payment is made by the stated cancellation date. The Court of Appeals cases, like the cases from other states, provide conflicting answers on this question. Compare Majority Op. at 91-92 (discussing cases), with Dissenting Op. at 97 (discussing cases).

This Court's only case suggesting that a notice of cancellation must be unconditional, in addition to clear, unambiguous, and unequivocal, predates the automobile, much less mandatory automobile liability insurance and the notice statute at issue here. See *Petersburg Sav. & Ins. Co. v. Manhattan Fire Ins. Co.*, 66 Ga. 446, 465 (1881). Moreover, *Petersburg* cannot bear the weight the dissenting opinion places on it. The jury instructions at issue in that case, and hence the Court's opinion, did state that the notice of cancellation "must be made or given unconditionally," rather than being " 'a mere expression of a desire . . . that the policy should be cancelled.' " Id. Close examination of the somewhat convoluted facts of the case, however, reveals that the controlling question was not whether the cancellation (of a fire re-insurance policy) was conditional, but rather whether it was clearly and unambiguously communicated to the Manhattan Fire Insurance Company by someone with authority to act as the Petersburg Savings and Insurance Company's agent in the matter.

A rule requiring cancellation notices to be truly "unconditional" would make little sense in light of the objective of the mandatory automobile liability insurance system. To be *truly* unconditional, a cancellation notice would have to state unequivocally that the insurance policy will be cancelled, *no matter what*, on a specified date, which could be as soon as ten days later, leaving the insured to obtain a *new* policy quite quickly. As the majority recognizes, see Majority Op. at 94, the overarching statutory policy that there be no gaps in insurance coverage is clearly promoted by instead allowing the existing insurer to offer the insured the opportunity to *continue* coverage simply by making the payment due before the clearly stated cancellation date. Writing and delivering a check or other payment is certainly easier and surer than finding, applying for, being approved for, and having in place a new insurance policy, particularly because there is no guarantee that the insured will be able to easily find a new policy or one at the same cost. Indeed, because the insurer may have an interest in keeping the insured's business, it may, as in this case, provide a grace period longer than the ten-day statutory minimum.

The appellants, and the dissenting opinion, seem to recognize that a rule requiring truly unconditional notice — that is, precluding

insurers from offering in a cancellation notice the option of continued coverage if the overdue premium is paid — will lead to more gaps in coverage. See Dissenting Op. at 97-98; Motion for Reconsideration at 25-28. Thus, the dissent asserts that continuation of coverage may be offered in the notice of cancellation by "leav[ing] open the possibility of reinstatement" of the policy if the overdue payment is received. Dissenting Op. at 98. I see no meaningful legal distinction, and I do not believe most laypeople would see any practical one, between a notice advising that a policy will be cancelled on a certain date *unless* the overdue payment is received (i.e., the type of notice in this case) and a notice advising that a policy will be cancelled on a certain date but will be reinstated *if* the overdue payment is received (i.e., the type of notice the dissent would approve). Either way the practical concerns that the appellants raise, such as uncertainty about whether a mailed payment has been received and credited, would be present. However, these issues, and many more, would be present if we required that an existing policy must actually be cancelled if a cancellation notice is to be effective, so that a new policy had to be obtained.

These cases are decided based upon the content of the specific notice at issue. Prudent insurers that wish to avoid legal risk and best serve their customers might choose the type of notice language that appellants endorse in their motion for reconsideration. I see no controlling legal distinction, however, between that language and the language of the notice in this case. There is no good reason to prevent an insurer from clearly and unambiguously notifying an insured that, due to overdue premiums, his or her policy will be cancelled on a specific date at least ten days later, while offering to continue or reinstate that policy if proper payment is received before that date.

As I said at the outset, this is a close case, but I ultimately agree with the majority that a notice of cancellation of an automobile insurance policy must be clear, unambiguous, and unequivocal, but need not be unconditional, and that the notice in this case satisfies that standard. We therefore properly give a negative answer to the certified question.

CARLEY, Presiding Justice, dissenting.

By failing to give full effect to longstanding precedent of this state and relying on inapplicable foreign authority, the majority erroneously holds that the purported notice of cancellation sent by Infinity was effective. Every time that a Georgia appellate court has considered the issue, it has declined to give effect to a notice which, like the one here, states that an insurance policy will be cancelled on a particular date unless premiums due are paid prior to that date. Because the notice in this case was conditional and equivocal, it

could not constitute a valid notice of cancellation.

As the majority acknowledges, citing *North Carolina Mut. Life Ins. Co. v. Bailey*, 185 Ga. App. 191, 193 (2) (363 SE2d 586) (1987), a notice of cancellation sent by an insurer must "positively and unequivocally state that the cancellation is taking place. [Cit.] It must be a clear and unambiguous statement to the insured that coverage is being terminated. [Cit.]" (Majority opinion, p. 91) Indeed, the majority articulates the issue as whether the notice "clearly, unambiguously, and unequivocally puts the insured on notice that the insurance coverage at issue is ending." (Majority opinion, p. 91) However, the majority disregards the fact that, for over 125 years, this Court has required that the notice of cancellation also be unconditional: "the notice of the purpose or determination of the [insurer] to cancel must be made or given unconditionally . . . ." *Petersburg Savings and Ins. Co. v. Manhattan Fire Ins. Co.*, 66 Ga. 446, 465 (8) (1881). See also 2 Lee R. Russ, *Couch on Ins.* § 32:32.

Furthermore, the notice is insufficient " 'if it . . . merely states a desire or intention to cancel.' [Cit.]" *Chambers v. Washington Nat. Ins. Co.*, 66 Ga. App. 509 (17 SE2d 899) (1941). See also *Petersburg Savings and Ins. Co. v. Manhattan Fire Ins. Co.*, supra (" '[A] mere expression of a desire upon the part of the [insurer] that the policy should be cancelled would not destroy the policy.' "). The cancellation notice must positively and unequivocally inform " 'the insured that it is the intention of the [insurer] that the policy shall cease to be binding as such upon the expiration of the stipulated number of days from the time when its intention is made known to the insured.' " *Chambers v. Washington Nat. Ins. Co.*, supra. See also *Reserve Life Ins. Co. v. Peavy*, 95 Ga. App. 195 (2) (97 SE2d 542) (1957). A "mere expression of a purpose or intention to cancel in the future is not sufficient; that is, [the notice] must be one of actual cancellation, not of future conditional cancellation . . . ." 2 Russ, supra at § 32:31.

These well-settled principles are consistent with the holding of the Georgia Court of Appeals that "[a] notice of cancellation which states that a policy will be cancelled on a specified date unless premiums due are paid prior to that date, is not a notice of cancellation, but merely a demand for payment. [Cits.]" *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Person*, 164 Ga. App. 488, 489 (1) (297 SE2d 80) (1982). See also *State Farm Mut. Auto. Ins. Co. v. Drury*, 222 Ga. App. 196, 200 (4) (474 SE2d 64) (1996). Compare *Daniels v. Allstate Ins. Co.*, 162 Ga. App. 758 (293 SE2d 39) (1982) (short opinion neither quoting from the cancellation notice nor addressing this issue). This principle obviously controls where, as in *Person* and *Drury*, nonpayment of the premium by the due date, which is the very event which triggers the cancellation, has not even occurred.

Conversely, the principle does not apply when "the declared reason for cancellation was a fait accompli prior to the notice of cancellation" and "the notice of cancellation left open the possibility of *reinstatement* of the policy." (Emphasis supplied.) *Southern Ins. Co. v. Walker*, 184 Ga. App. 369, 370 (361 SE2d 502) (1987).

In the case at bar, the declared reason for cancellation was nonpayment of premiums and was a "fait accompli." However, the notice here, unlike that in *Walker*, did far more than merely leave open the possibility of reinstatement. Thus, I note that, contrary to the last paragraph of the majority opinion, disapproval of Infinity's cancellation notice would not preclude the inclusion of a reinstatement option in future notices. As set forth in the majority opinion, the notice in this case provided only that the insurance would cease "unless" payment is received before the cancellation date, or "if" the premium amount listed is not received. By this conditional language, the notice treated cancellation as a future occurrence which was explicitly conditioned on nonpayment of the premium. Thus, the notice states a mere intention to cancel and fails to meet the requirement of positively, unequivocally, and unconditionally stating that coverage is being terminated.

Two of the four foreign cases upon which the majority relies on page 93 of its opinion involve notices which merely leave open the possibility of reinstatement and, thus, are clearly distinguishable in the same manner as *Walker*. *Metropolitan Group Prop. and Cas. Ins. Co. v. Lopes*, 826 A2d 87 (R.I. 2003); *Norman v. State Farm Mut. Auto. Ins. Co.*, 33 P3d 530 (Ariz. App. 2001). The wording of the notices in the other two foreign cases, *Johnson v. Williams*, 828 S2d 90 (La. App. 2002) and *Motors Ins. Corp. v. Woodcock*, 394 S2d 485 (Fla. App. 1981), indicates a present and unequivocal cancellation, as well as the equivalent of an opportunity for reinstatement, even though the word "reinstatement" is not used. In fact, these foreign cases undermine the majority opinion in certain respects. The Rhode Island court observed that "[c]ourts have held that a notice must 'clearly and unequivocally show a *present cancellation*.' [Cits.]" (Emphasis in original.) *Metropolitan Group Prop. and Cas. Ins. Co. v. Lopes*, supra at 90. The Arizona court "hasten[ed] to explain that inclusion of a premium payment option in a notice of cancellation may still create an ambiguity that could vitiate an attempted cancellation." *Norman v. State Farm Mut. Auto. Ins. Co.*, supra at 536 (II).

More important for Georgia, the Florida court dealt with the very precedent upon which this state's Court of Appeals relied in *Person*. *Woodcock* distinguished *Travelers Ins. Co. v. Jenkins*, 285 S2d 839 (La. App. 1973) (notice given after premium due), which *Person* cited for the proposition quoted above that the language "will

be cancelled . . . unless premiums due are paid" is not sufficient for a notice of cancellation. The Florida court also distinguished the case relied on in *Jenkins*, *Ellzey v. Hardware Mut. Ins. Co. of Minn.*, 40 S2d 24 (La. App. 1949) (notice given after premium due), on the specific basis that it involved "notice that 'the policy will be cancelled unless.'" *Motors Ins. Corp. v. Woodcock*, supra at 487. This wording is nearly identical to the language in the case now before us. The notice of cancellation here "does not purport to cancel the policy. It merely states that unless the premium be paid by a certain date, [the 'insurance will cease']. Such a notice is not, in itself, a cancellation ([cit.]) . . ." *McNellis v. Aetna Ins. Co.*, 176 Ill. App. 575 (1913) (notice given after premium due). See also *Fisher v. Associated Underwriters*, 13 NE2d 809, 811 (Ill. App. 1938) (notice given after premium due).

Georgia should continue to adhere to the general rule that "a notice of cancellation is not effective as such and is really a demand for payment where it recites that the policy will be canceled if the premium is not paid by a certain date. [Cits.]" 1 Schermer and Schermer, Auto. Liability Ins. 4th § 8:9. Because the notice sent by the insurer in this case simply did not constitute a present, un-equivocal, and unconditional cancellation of the policy, I respectfully dissent to the judgment answering the certified question of the United States Court of Appeals for the Eleventh Circuit.

I am authorized to state that Chief Justice Hunstein and Justice Benham join in this dissent.

DECIDED MARCH 15, 2010 —
RECONSIDERATION DENIED APRIL 9, 2010.

*Ben C. Brodhead III*, for appellant.
*Swift, Currie, McGhee & Hiers, Stephen L. Cotter, Yoon J. Ettinger*, for appellee.