A11A0087. BURNSIDE et al. v. GEICO GENERAL INSURANCE COMPANY.
(714 SE2d 606)

DILLARD, Judge.
Robert W. Burnside and Marianne E. Burnside appeal the trial court's grant of summary judgment to GEICO General Insurance

---

Company on the Burnsides' declaratory-judgment action, in which the Burnsides claim to have never received notice from GEICO regarding the cancellation of an automobile insurance policy. The Burnsides now argue that the trial court erred by finding that GEICO followed the statutory requirements of OCGA §§ 33-24-44[1] and 33-24-45 (c)[2] for cancelling their insurance policy. Finding no error, we affirm the grant of summary judgment in favor of GEICO.

At the outset, we note that "[o]n appeal from a grant of a motion for summary judgment, we review the evidence de novo in the light most favorable to the nonmovant to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law."[3] As the moving party, GEICO may do so by "showing the court that the documents, affidavits, depositions, and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case."[4]

So viewed, the record shows that the Burnsides renewed their insurance policy with GEICO on August 24, 2006, and a renewal bill was sent that same day with a due date of September 15, 2006. But this due date came and went without full payment by the Burnsides. And as a result, GEICO mailed a notice of cancellation to the Burnsides on October 16, 2006, with an effective date of October 27, 2006, at 12:01 a.m.

Unfortunately, on November 7, 2006, Mrs. Burnside's vehicle was struck by a deer, and the Burnsides claim that they learned for the first time that their policy had been cancelled when Mr. Burnside called GEICO a few hours later to report the accident. That same night, the Burnsides made a payment to GEICO that resulted in the reinstatement of their policy, but pursuant to the policy terms, this reinstatement was not retroactive and did not cover Mrs. Burnside's accident.

After GEICO refused to cover the November 7, 2006 accident, the Burnsides sought declaratory judgment on the issue of whether GEICO effectively cancelled their policy by following the statutory requirements of OCGA §§ 33-24-44 and 33-24-45 (c). GEICO there-

---

[1] To cancel a policy by mail, this Code section requires, *inter alia*, that the insurance company obtain a post office certified mailing receipt, and that the notice be sent by first-class mail at least ten days prior to cancellation. *See* OCGA § 33-24-44; *see also Stapleton v. Colonial Ins. Co. of Cal.*, 209 Ga. App. 674, 674 (2) (434 SE2d 116) (1993).

[2] This subsection provides the reasons for which an insurance policy may be cancelled by mail, including the failure to make payment. *See* OCGA § 33-24-45 (c).

[3] *Zilka v. State Farm Mut. Auto. Ins. Co.*, 291 Ga. App. 665, 665 (662 SE2d 777) (2008) (citation omitted); *see also Atlanta Cas. Co. v. Boatwright*, 244 Ga. App. 36, 37 (534 SE2d 516) (2000).

[4] *Boatwright*, 244 Ga. App. at 37.

after sought summary judgment, which the trial court granted after determining that GEICO presented evidence demonstrating that it followed the statutorily required procedure to cancel a policy for nonpayment. This appeal by the Burnsides follows, in which they argue that the trial court erred by finding that (1) GEICO mailed them a notice of cancellation, (2) GEICO obtained the statutorily required receipt of mailing, (3) the policy was cancelled on October 27, 2006, for nonpayment, and (4) the Burnsides made payment on November 7, 2006, to reinstate the policy. We will address each of these arguments in turn.

1. The Burnsides first argue that the trial court erred in finding that GEICO mailed a notice of cancellation when the Burnsides presented circumstantial evidence that they never received same. Specifically, the Burnsides argue that GEICO failed to show what, if anything, was actually mailed to them on October 16, 2006. We disagree.

In conjunction with its motion for summary judgment, GEICO presented two supporting affidavits: one from an underwriter who was personally familiar with the Burnsides' account, the business records generated in connection with the Burnsides' policy, and the method and manner of keeping same; and another from the output manager for the company's national print mail center, who explained the company's method of sending cancellation notices.

The underwriter averred that the Burnsides failed to make proper payment on their renewed policy. Accordingly, a notice of cancellation was mailed to the Burnsides on October 16, 2006, explaining that there would be no coverage following the effective date of cancellation, i.e., October 27, 2006. Thereafter, the notice was sent through the company's bulk mail system, and the company obtained a mailing receipt, which was stamped by the United States Postal Service ("USPS") on October 16, 2006. The underwriter further averred that the notice of cancellation was not returned, no payment was received, and the policy was cancelled on October 27, 2006. Finally, the underwriter noted that the Burnsides made a payment of $970.60 at 8:51 p.m. on November 7, 2006, and that their policy was reinstated on November 8, 2006.

Additionally, the underwriter's affidavit included as attachments copies of documents prepared and maintained as part of GEICO's routine business practices, including the notice of cancellation, the mailing receipt stamped by the USPS, a "new business declaration" reflecting the reinstatement of the Burnsides' policy, and a statement of the Burnsides' account. The "Notice of Cancellation for Nonpayment of Premium" noted that the Burnsides' policy would be cancelled as of 12:01 a.m. on October 27, 2006, and it was dated October 16, 2006. It further noted that the Burnsides owed $168 and explained

that the last full day of coverage would be the day before cancellation. The mailing receipt was effectively a list of the names, addresses, and policy numbers of the insured individuals who were the subject of the bulk-mail batch, including the Burnsides. This receipt was stamped by the USPS on October 16, 2006, and also contained a separate stamp reflecting that the policy-holders listed were being sent "cancellation notices, notices of non-renewal, and/or surcharge notices." And as for the "new business declaration," it was issued on November 8, 2006, and noted that it was a reinstatement of the earlier-terminated policy and that a lapse in coverage remained between the times of cancellation and reinstatement. Finally, the statement of the Burnsides' account reflected activity and action on the Burnsides' policy, including all of the above-mentioned actions and applicable dates.

Suffice it to say, GEICO presented sufficient evidence to establish that the notice of cancellation was mailed to the Burnsides.[5] Indeed, the Burnsides' claim that they did not actually receive the notice of cancellation is irrelevant because "proof of actual delivery is not necessary" and "the notice of delivery was legally effected by the act of mailing and securing the Post Office receipt."[6] Thus, because the mailing receipt stamped by the USPS and other evidence

---

[5] *See Int'l Serv. Ins. Co. v. Consol. Underwriters*, 125 Ga. App. 786, 786 (1) (189 SE2d 123) (1972) (affirming trial court's finding, based solely on business records, that insurance company effectively cancelled policy); *see also Auto-Owners Ins. Co. v. Alexander*, 293 Ga. App. 459, 460 (667 SE2d 628) (2008) ("A cancellation notice . . . becomes valid only upon deposit in the U. S. mails with the issuance of an appropriate receipt." (citation and punctuation omitted)); *Smith v. Allstate Ins. Co.*, 573 FSupp. 707, 709 (N.D. Ga. 1983) (affirming finding that policy was cancelled when company produced receipt of mailing notice of cancellation). *Compare Boatwright*, 244 Ga. App. at 38 (1) (reversing grant of summary judgment for insured but noting that insurance company presented conflicting evidence as to whether insured owed money at time cancellation notice mailed); *Allstate Ins. Co. v. Ackley*, 227 Ga. App. 104, 106 (2) (488 SE2d 85) (1997) (holding that because there was "no evidence of a . . . cancellation notice, a post office receipt, or mailed envelope containing the statutory cancellation notice[,]" and no testimony that notice was mailed, policy coverage was not cancelled). *But cf. State Farm Mut. Auto. Ins. Co. v. Drury*, 222 Ga. App. 196, 197 (1) (474 SE2d 64) (1996) (physical precedent only) ("[T]o create a presumption that the insured received the premium due notice, the law requires proof that the notice was placed in an envelope properly addressed to the insured's last known address, with correct postage affixed, and duly mailed in the United States Post Office. State Farm offered no evidence that the . . . notice was in fact so mailed, and thus it was not entitled to the benefit of the favorable presumption." (citations omitted)).

[6] *Harris v. U.S. Fid. & Guar. Co.*, 134 Ga. App. 739, 743 (3) (216 SE2d 127) (1975) (holding that "[s]ince the statute in effect says that mailing is delivery of the notice to the insured, it has the same effect as actual delivery to the insured," and "such proof of mailing by the directly identified Post Office receipt is proof of delivery . . . and proof of the subsequent failure of the Post Office Department to deliver the mails is not proof of nondelivery of the notice"); *see also Smith*, 573 FSupp. at 709 ("Plaintiff's claim that he did not receive the notice is irrelevant where there is no evidence to contradict the fact that the [statutory] requirements have been satisfied."). *Compare Ga. Farm Bureau Mut. Ins. Co. v. Gordon*, 126 Ga. App. 215, 216 (1) (190 SE2d 447) (1972) (holding that although insurance company mailed notice of cancellation, no cancellation was effected when company failed to obtain mailing receipt).

presented by GEICO showed without contradiction that the requisites of OCGA §§ 33-24-44 and 33-24-45 (c) were satisfied, "whether notice of cancellation had in fact been received by the insured is legally irrelevant and is not an issue which would preclude summary judgment."[7]

2. The Burnsides next argue that the mailing receipt was defective and therefore insufficient to meet the statutory requirement for proof of mailing because (1) the receipt is ambiguous, (2) the receipt does not specify whether the mail was sent first class as required, and (3) the form was not properly filled out. We disagree.

To begin with, the Burnsides argue that the mailing receipt's notation that the listed policy-holders were mailed "cancellation notices, notices of non-renewal, and/or surcharge notices" renders it insufficient to establish that the Burnsides were actually mailed a cancellation notice. However, as detailed in Division 1, GEICO produced evidence establishing that on the same date the USPS stamped the mailing receipt—October 16, 2006—the Burnsides were sent a cancellation notice and *not* a notice of nonrenewal or a surcharge notice. Furthermore, GEICO submitted an affidavit from the output manager for its national print mail center, who explained that cancellation notices are submitted to the center electronically, printed, and then inserted into envelopes either manually or by machine, depending on the batch size, before being matched to the appropriate mailing receipt. This evidence was sufficient to establish that the October 16, 2006 mailing contained a notice of cancellation sent to the Burnsides.[8]

Additionally, as to the matter of postage, the output manager averred that all cancellation notice envelopes are given a sufficient postage amount and that all mail referenced in the mailing receipt stamped October 16, 2006 (which included the Burnsides), "was

---

[7] *Hill v. Allstate Ins. Co.*, 151 Ga. App. 542, 543 (2) (260 SE2d 370) (1979); *see also Cont'l Ins. Co. v. State Farm Mut. Ins. Co.*, 212 Ga. App. 839, 843 (2) (443 SE2d 509) (1994) (holding that "[w]hether or not [the insured] actually received the cancellation notice is legally irrelevant" because "[t]he statute only requires proof of mailing, not receipt by the insured of the notice of cancellation." (citations and punctuation omitted)); *State Farm Mut. Auto. Ins. Co. v. Harris*, 177 Ga. App. 826, 828 (341 SE2d 472) (1986) (same). *But see Bituminous Cas. Co. v. Renfroe*, 130 Ga. App. 621, 624 (1) (204 SE2d 317) (1974) (physical precedent only) (holding that insured rebutted presumption of receipt); *New Amsterdam Cas. Co. v. Russell*, 102 Ga. App. 597, 600-01 (2) (117 SE2d 239) (1960) (holding that there was sufficient evidence of nonreceipt for jury consideration when insured's name in cancellation notice contained typographical error); *Powell v. Lititz Mut. Ins. Co.*, 419 F2d 62, 66 (5th Cir. 1969) (construing Georgia law to hold that mailing notice is sufficient minimum requirement only when policy so provides). *See generally Harris*, 134 Ga. App. at 744-47 (3) (distinguishing cases that have held that an insured's claim of nonreceipt creates a jury question).

[8] *Compare Allstate Ins. Co. v. Cody*, 123 Ga. App. 265, 265-66 (180 SE2d 596) (1971) ("There is nothing on the receipt of mailing that indicates the contents of the matter mailed to [the insured].").

processed by GEICO and mailed pursuant to [the company's] policies regarding the handling of mail." Accordingly, this was sufficient evidence to establish that the Burnsides' notice of cancellation was given the proper amount of postage.[9]

Finally, the Burnsides' argument that the mailing receipt is insufficient because there is "no stamp affixed at the top as required on the approved form and there is no name or signature of the receiving employee as required on the approved form" is likewise without merit. Indeed, "the absence of the signature of the postal clerk on the receipt is not fatal, since the document has the official U. S. postal service stamp showing receipt by the U. S. postal service."[10]

3. The Burnsides' third contention is that the trial court erred in finding that the cancellation of their policy took place on October 27, 2006, because there is a question of fact as to when the cancellation became effective. We disagree.

As discussed in Division 1, the cancellation notice clearly provided that the Burnsides' policy would be cancelled effective October 27, 2006, at 12:01 a.m. and that there would be no coverage on the policy after this date. The Burnsides attempt to create an issue of fact here by pointing to a statement they received after their policy was reinstated, which notes that as of November 7, 2006—the date of Mrs. Burnside's accident—the policy was cancelled. On the same line, this statement also notes an "effective" date of October 15, 2006. The Burnsides argue that this creates an issue of fact as to when their policy was actually cancelled; however, they simply misconstrue the use of the term "effective" on this statement. The policy that they renewed on August 24, 2006, was to be effective beginning October 15, 2006, until April 15, 2007. Accordingly, the Burnsides have presented nothing to contradict GEICO's evidence that the policy was cancelled effective October 27, 2006, at 12:01 a.m.[11]

4. The Burnsides' final contention is that the trial court erred by finding that they made payment to GEICO on November 7, 2006, for

---

[9] *See Stapleton*, 209 Ga. App. at 674 (2) ("This affidavit shows the supervisor was the custodian of the documents showing that the notice of cancellation of [the] policy was properly mailed, and the purpose of her affidavit was to satisfy the criteria necessary for admissibility of these documents as business records. Accordingly, it is not required that this supervisor have actual personal knowledge of the preparation of and mailing of the notice." (citations omitted) (citing *Allstate Ins. Co. v. Buck*, 96 Ga. App. 376, 378 (100 SE2d 142) (1957))).

[10] *Id.*

[11] *Cf. Reynolds v. Infinity General Ins. Co.*, 287 Ga. 86, 91 (694 SE2d 337) (2010) ("The . . . notice plainly states . . . that coverage under the policy will cease on a certain time and date. And, it explains why coverage is being cancelled—because the insured has failed to pay for the policy. There is nothing in the notice to indicate that the cessation of coverage will not occur; there are no misleading or confusing statements.").

the purpose of reinstating their policy. The Burnsides claim that this statement by the trial court "assumes" their intent and that they instead made payment "for the entire year while [GEICO] investigated the claim of the accident." But whether or not it was the Burnsides' *intent*, reinstatement of the policy was the *effect* of their November 7, 2006 payment.

As we noted in Division 1, GEICO presented sufficient evidence that the policy was cancelled, and the October 16, 2006 notice of cancellation clearly provided that coverage would discontinue as of October 27, 2006. And while the Burnsides made payment on November 7, 2006 (*after* sustaining automobile damage and *after* allegedly learning for the first time that their coverage had been cancelled), GEICO's receipt of this payment resulted in the reinstatement of the policy the following day. Thus, the Burnsides' intent in making payment after the fact is wholly irrelevant to whether summary judgment was appropriate on the issue of whether their policy was cancelled at the time of the accident.[12]

Accordingly, for all of the foregoing reasons, we affirm the trial court's grant of summary judgment.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JUNE 15, 2011.

*Marianne E. Burnside*, for appellants.

*Cruser & Mitchell, Joseph R. Cruser, Nola D. Jackson*, for appellee.

---

[12] *Compare Zilka*, 291 Ga. App. at 667 (2) ("[The insurance company] reinstated the policy upon its receipt of the premium payment . . . , but nothing in the policy required that the reinstatement be retroactive to the date of cancellation, and the notice of cancellation specifically provided that there would be no coverage between the date of cancellation and the date of any reinstatement." (citation omitted)).